## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
### PITTSBURGH DIVISION

| | |
|---|---|
| Michael Maiolo, individually and on behalf of all others similarly situated, | |
| Plaintiff, | 2:22-cv-1770 |
| - against - | Class Action Complaint |
| BRP US Inc., | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.       BRP US Inc. ("Defendant") manufactures, markets, and sells street legal three-wheel motorcycles such as the Can-Am Ryker ("Product").



2.       The Product is marketed as coming with an anti-theft system known as DESS, or digitally encoded security system, a battery-less key containing an electronic circuit.

3.       DESS contains a pre- programmed chip that uses radio frequency to tell the vehicle's

immobilizer to start the engine, shown in the specification sheet.

## SAFETY & SECURITY

| SCS | Stability Control System |
| --- | --- |
| TCS | Traction Control System |
| ABS | Anti-Lock Braking System |
| Anti-theft System | Digitally Encoded Security System (D.E.S.S.™) |
| HHC | Hill Hold Control |

4.    The Owner's Manual received by purchasers tells them they will receive "Two RF D.E.S.S. keys [] with the vehicle."



5. Numerous purchasers of the 2022 model did not receive a DESS with their vehicles even though they were promised this.

6. The result is that the vehicles are susceptible to theft through the use of a simple magnet or any CanAm DESS key.

7. Purchasers were not offered discounts when they bought the vehicles without the expected security features.

8. While some customers were provided with physical locks, this is not equivalent to the DESS keys.

9. The failure to provide DESS keys has been attributed to the "global chip shortage," but no firm timeline of when customers will receive their DESS keys has been provided.

10. When customers contact Defendant about the failure to provide them DESS keys, they are told this is a warranty-related issue they should take up with their dealerships.

11. However, the dealerships tell customers that the lack of a DESS key is something that only Defendant can address.

12. As a result of the false and misleading representations, the various versions of the Product are sold for no less than $8,999, excluding mandatory add-on charges, tax and sales.

<u>Jurisdiction and Venue</u>

13. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

14. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

15. Plaintiff is a citizen of Pennsylvania.

16. Defendant is a Delaware corporation with a principal place of business in Wisconsin.

17.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

18.     The members of the class Plaintiff seeks to represent are more than 100, because Defendant has sold thousands of vehicles without DESS keys across the States covered by Plaintiff's proposed classes.

19.     Venue is in this District with assignment to the Pittsburgh Division because a substantial part of the events or omissions giving rise to these claims occurred in Allegheny County, including Plaintiff's purchase and use of the Product, exposure to and reliance on the representations, and his awareness that they were misleading.

Parties

20.     Plaintiff Michael Maiolo is a citizen of Pittsburgh, Allegheny County, Pennsylvania.

21.     Defendant BRP US Inc. is a Delaware corporation with a principal place of business in Sturtevant, Racine County, Wisconsin.

22.     Its parent company, Bombardier Recreational Products Inc., is a Canadian corporation, and the world's leading seller of recreational vehicles, with an industry-wide reputation for innovation, quality, and value.

23.     The Product is available to consumers from authorized dealers.

24.     Plaintiff purchased the Product from an authorized dealer in July 2022.

25.     Plaintiff expected it would come with a DESS key, which was how it was advertised and is known as the security method for the Can Am Ryker vehicles.

26.     Plaintiff was unable to use his vehicle in the manner he expected because, for instance, he could not leave it anywhere unattended, lest it be stolen.

27.     Plaintiff relied on the words, descriptions, statements, omissions, claims, and

instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

28.    Plaintiff paid over $14,000 for the Product, which was more than he would have paid had he known it would not be delivered with the promised security system, or would not have purchased it.

29.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

30.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

31.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

32.    Plaintiff is unable to rely on the anti-theft representations not only of this three wheeled motorcycle, but other similar ones, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

33.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Pennsylvania Class:** All persons in the State of Pennsylvania who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Kansas, Minnesota, Mississippi, North Dakota, West Virginia, Utah, Montana, Idaho, Georgia, Kentucky, Iowa, and Alaska who purchased the Product during the statutes of limitations for each cause of action alleged.

34.    Common questions of issues, law, and fact predominate and include whether

Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

36. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

36. Plaintiff is an adequate representative because his interests do not conflict with other members.

37. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

38. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

39. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

40. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),<br>73 Penn. Stat. Ann. §201-1, *et seq.*</u>

41. Plaintiff incorporates by reference all preceding paragraphs.

42. Plaintiff expected the Product would be supplied to him with the promised DESS system.

43. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

44. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

45.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

46.    The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

47.    Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

Breach of Contract

48.    Plaintiff entered into a contract with Defendant or its authorized agents to buy the Product.

49.    The terms of the contract required that he be provided with DESS keys for the vehicle following his payment of monies to Defendant.

50.    After Plaintiff paid for the Product, he received the vehicle without the DESS keys.

51.    The failure to provide the DESS keys was a breach of the contract, entitling Plaintiff to damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

52.    The Product was manufactured, identified, marketed, distributed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would be supplied with the promised DESS system.

53.    Defendant directly marketed the Product to Plaintiff through its advertisements and

marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising.

54.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing to directly meet those needs and desires.

55.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it had a robust anti-theft system which was convenient to use.

56.    Defendant's representations affirmed and promised that the Product would be supplied with the promised DESS system.

57.    Defendant described the Product so Plaintiff believed it would be supplied with the promised DESS system, which became part of the basis of the bargain that it would conform to its affirmations and promises.

58.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

59.    This duty is based on Defendant's outsized role in the market for this type of Product, the leading seller of street legal recreational vehicles.

60.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

61.    Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

62.    Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

63.    The Product did not conform to its promises or affirmations of fact due to

Defendant's actions.

64.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made in marketing or advertising, because it was marketed as if it would be supplied with the promised DESS system.

65.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would be supplied with the promised DESS system, which would allow him to take the vehicle more places and park it safely, not having to be concerned about its vulnerability to theft.

Negligent Misrepresentation

66.    Defendant had a duty to truthfully represent the Product, which it breached.

67.    This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in the area of recreational vehicles.

68.    Defendant's representations and omissions went beyond the specific representations made in marketing, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that Bombardier has been known for.

69.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

70.    The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

71.    Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

<u>Fraud</u>

72.     Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would be supplied with the promised DESS system.

73.     Even if Defendant was aware of a global chip shortage at the time it sold the vehicle to Plaintiff, it failed to inform him of this fact, nor did it reduce the price he paid.

<u>Unjust Enrichment</u>

74.     Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   December 8, 2022

                                                  Respectfully submitted,

                                                  /s/ Spencer Sheehan
                                                  Sheehan & Associates, P.C.
                                                  60 Cuttermill Rd Ste 412
                                                  Great Neck NY 11021

(516) 268-7080
spencer@spencersheehan.com